The next matter on our calendar is Stephen Tobin v. The Rector, Church Wardens, and Vestrymen of Trinity Church. Thank you. Good morning, Your Honor. May it please the Court. I'm here on behalf of the artist Steve Tobin, appellant, along with my co-counsel, the Honorable Stephen Honigman. This appeal turns on the issue of whether or not the sculpture, the Trinity Root, was modified in violation of the Visual Artist Rights Act of 1990, also known as VERA, by the removal of the sculpture from the site for which it was created in 1996. It is our position that this case needs to be returned for a full trial and that there be a reversal of the 12b-6 dismissal. But VERA itself provides that placement is one of the things that could be modified. It absolutely does, Your Honor, but we do not believe that placement or presentation, public presentation, is the same as location. Presentation, its something presented. What is the lighting that's used in the statute? What is the placement? That means is the work angled to one degree this way or that way? Is it placed forward or backwards? Location is something entirely different. The entire purpose of VERA was to protect the integrity of the artist as it is expressed in the artwork. With an artwork such as this, which was created by agreement of both parties to be a memorial to 9-11, to the victims and the responders. What is the location that is specific to this piece of art? In this case, it's the location that the parties agreed to place it in, which is the Trinity Church Courtyard. Now, the sculpture is evocative of something that once existed at St. Paul's, is that right? Not exactly. The parties, by agreement, had the artist take a root of a tree, which saved St. Paul's Chapel, and cast it into a sculpture using debris, DNA, in the patina. It was agreed by the parties that it would be placed in another location of the church, which is Trinity's Courtyard. It's about a half a mile away from St. Paul's. The location that you're requesting would be somewhere in lower Manhattan? No, we're actually requesting that it be returned to the Trinity Church Courtyard, because that's where the parties agreed it would be placed. The artist gave a sketch of the sculpture within the Trinity Church Courtyard to Trinity Church, and they approved its location there. It is true that the event was a lower Manhattan event. Although 9-11 involved two particular towers being destroyed, the trauma was throughout lower Manhattan. Are these rights that can be waived? Yes, if they're in an explicit writing. Now, my opponents claim that the contract constitutes a waiver. We disagree. Nowhere in the contract is the word vera used. Nowhere does it state vera rights have been waived. Now, if you contrast this with a federal statute, let's say the ADEA, that requires that any waiver be statutory specific, that kind of federal statute uses different language, doesn't it? I'm sorry, I'm not quite understanding the question. As part of a federal statute like the ADEA, it reads as follows, the waiver specifically refers to rights or claims arising, quote, under this chapter, close quote. Yes. The statute you're relying on doesn't have similar language, does it? The statute states that the waiver must be in a position that the waiver must state this is a vera waiver and a waiver of vera rights because vera rights are very distinct. They are not equivalent to property rights. The statute makes clear that vera is a set of rights distinct from copyright and distinct from ownership of the piece itself. It's a very novel concept in the American legal system. Obviously, it comes from the Droit Morel from the French civil law. It is not a common law concept, which is why Congress went to the effort of stating that the waiver must be explicit. At a minimum, Your Honor, I think the waiver must state this is a vera waiver and a waiver of vera rights because they are so unique, these rights. Counsel, I have one question before your time expires. Assuming we don't agree with you that location and placement are different concepts, do you think you sufficiently argued gross negligence? I do, Your Honor. In the recent case of Cohen v. G&M, commonly known as the five points case, the judge in that case determined that because the artworks were partially painted over in violation of the artist's rights, that it was gross negligence to deny the artist the opportunity to obtain an injunction preserving the artwork with its integrity in its original state. Similarly, in this case, Mr. Brockman, a spokesman for the church, told our client on December 11, 2015, that he wanted to repurpose the courtyard and remove the work. Our client said, would you please give me a week? My children haven't even seen the sculpture yet. Would you give me a week to determine what to do about this? The following Monday, my client called and said, I'm coming up the next week. I'm bringing my children. Mr. Brockman admitted he, in fact, had stealthily already on December 11 removed the piece to rural Connecticut, thereby depriving my client of the opportunity to seek an injunction and preserve the integrity of the art as it was created and where it was cited. Which brings me to my last question. Which I believe is the question. What kind of relief are you seeking here? Let's assume for a second that I agree with you that you have sufficiently pled gross negligence. I understand and I see from the pictures that portions of the route have been broken off in the move. And the move was much less conscientious than the move bringing the statue to Trinity in the first place. What relief, assuming we agree that there was gross negligence, just for the sake of this question, what relief can we offer you? I request that the case be sent back for a full trial so that we can have expert testimony on the meaning of the sculpture and the necessity of it being in the location. Ideally, I want the sculpture returned to the site for which it was created. My client spent over a million dollars creating it. Ideally, that's what you want. All right. Thank you very much. You've reserved three minutes for rebuttal. Thank you, Your Honor. Trinity Church. Good morning. May it please the Court. Peter Tomlinson on behalf of Trinity Church. Mr. Tobin brings this lawsuit seeking the extraordinary remedy of an injunction requiring my client to display a sculpture that it's undisputed that it owns in its courtyard. That's what this lawsuit is about. Judge Pooler, you asked that. They want a court order that we have to continue to display the sculpture. Trinity displayed the sculpture in its courtyard for 10 years. Trinity owns the sculpture that is undisputed. There is a contract that governs the parties' relationships. In that contract, I think there's two very important provisions. There's one where Trinity is not required to publicly display the sculpture. Trinity could store it in a warehouse. Mr. Tobin entered this contract with Trinity. The contract specifically says Trinity has no obligation to display it. Trinity can also loan it to third parties under the agreement. If a museum in Sydney, Australia was doing a 9-11 exposition, Trinity could lend the sculpture to the museum in Australia for five years and be in compliance with the agreement. Under either of those be in the courtyard. So the sculpture cannot be site-specific. The district court did not actually... Couldn't it be site-specific such that, well, you say they can loan it or they can store it, but could the contract and the act mean that, but when they do display it, they must display it at its site-specific site? Judge Newman, I think there's a tension in that question in that if they could lend it in compliance with the contract to a museum in Australia for 10 years and it would not be in the courtyard, or they could store it in their warehouse for 20 years. So if it was site-specific, there would be huge periods of time. It could be during almost the artist's entire life that it's not on display in the courtyard. And by agreeing to those limitations on Trinity's obligations, it's not site-specific. And I would say in response to Judge Cope's questions earlier, I think there's also a very clear waiver here. The VARA statute requires that the waiver be in writing. We have that in writing. The statute requires that the waiver reference the work of art. It's undisputed that the contract here references the work of art. And it has to talk about the use. And the contract specifically says Trinity doesn't have to publicly display it. Trinity can loan it to third parties. There's nothing in the statute that says you have to reference VARA. I think our waiver is actually more than that. We're not arguing that Mr. Tobin has waived all of his VARA rights. We're arguing that he has waived his VARA rights with respect to location. Talk to me about the negligence in moving the statue from Trinity to Connecticut. I don't think they've established gross . . . Parts of it were broken off. I've seen pictures. Yes. And I think the words used in the plaintiff's complaint was minor repairable damage. Minor repairable damage. And I think that's what the plaintiff's complaint is describing the sculpture, describing what happened to the sculpture. And Judge Schofield looked at all of the allegations in the complaint and said they don't rise to the very high level of gross negligence, which is a reckless disregard of a legal duty. And I think respectfully, if you look through the complaint, those allegations can't meet that high standard. One of his allegations is that we should have used the same mover that he used and that this minor repairable damage. One of his allegations is that he wanted to come repair it. The sculpture has not been significantly damaged and I don't think those allegations can rise to gross negligence. I also want to pause briefly on the public policy ramifications of his position. If location is really protected by VARA, it's a very . . . it can lead to some very, very strange results. You can have somebody who has a sculpture on their property and they sell it to someone else and the new owner doesn't like the sculpture and the artist could literally sue the new owner and say you have to keep that sculpture there. There's an interesting case in the Central District of California that raises some of these policy issues. A teenager painted a mural on a dam somewhere in Southern California back in 1976. And in 2014, the municipality discovered that there was lead paint in the sculpture. So he said we're going to get rid of this sculpture. It's causing problems and the dam was actually part of a reservoir. And there's no public health or safety exception for VARA. And the artist, who was a teenager at the time, still alive in 2014, sued and said oh under VARA you can't move my sculpture. It's site specific. The court ended up dodging the issue about site specificity and VARA under the building exception. But there's an interesting discussion. It's a Central District of California case about some of the policy implications and could Congress really have intended to give an artist a lifelong veto over location? I think Judge Batts summed it up best in her case. It said VARA is intended to protect a work of art as it is, not where it is. And I think the English case, the Judge Bayer case that Judge Schofield relied on is also very similar to ours. A sculpture in a garden actually in Manhattan. The owner of the piece of property said we'll give the sculpture back to the artist, just like we did here in this case. And the artist said no, no, you've got to keep it there forever. Or keep it there for my lifetime is actually the limit of VARA. And sued and sought an order requiring the owner of the property to keep it there, basically saying you can't build a building there. And Judge Bayer, like Judge Schofield, pointed to the public presentation exception. And just one last point about what Ms. Elson said. I mean it says very clearly in the legislative history that location is a matter of public presentation. So I think that could not be clearer under the legislative history. And I think if you do apply VARA in the manner that Mr. Tobin is seeking, it can lead to some rather extreme results. On the gross negligence point, the two of you seem to be talking about slightly different things. I take it you're suggesting that whether there's gross negligence depends on the manner of the removal. If they hired a totally incompetent mover to move it and he broke it, that would be in the area of negligence. Your adversary is talking about the sort of surreptitious removal, naïve and not giving the family a chance to see it. So you're suggesting you're really talking about different things. And I wonder if you want to talk about why you think what she's talking about is not gross negligence rather than what you're talking about. And I think, Judge Newman, that's actually a very interesting question. The gross negligence exception to the public presentation exception talks about caused by gross negligence. And are we talking about the decision to move the sculpture or are we talking about the decision to move the sculpture? I think Judge Schofield sliced and diced at that finally. I think she generally talked about all of the allegations. I think none of the allegations rise to the level of gross negligence. I think the Trinity's, the timing of Trinity's decision to move the sculpture, which again we're just accepting as given for purposes of the motion to dismiss the allegations in the complaint, which I think if the case had gone farther to discovery, there would have been disputes about those. But accepting them as true in response to your question, I don't think those rise to the reckless disregard of a legal duty, the very high standard of gross negligence, the fact the Trinity moved the sculpture that it owns using a mover of its choice. I don't think those can, that can rise to the level of gross negligence. I see my light's on. I just wanted to make a few quick points. You know, obviously the district court only decided the public presentation exception. They did not reach any of the other issues. But this court is free to affirm on that basis or other bases, and I think as we lay out on our briefs, we think there is a very explicit waiver. So that's a completely separate and independent basis for affirming the dismissal of the complaint. We also think as a factual matter, there's no dispute that this sculpture is not site specific. It is not. Mr. Tobin himself told the Wall Street Journal, he told the New York Times, he told Artnet that the sculpture could be located anywhere in lower Manhattan. He mentioned the 9-11 museum as a good, as a good candidate. Also as Judge Cote observed earlier, the tree that this sculpture is based on never actually grew in the Trinity Church courtyard. It's a half a mile away in St. Paul's Chapel's courtyard. So the tree itself is not, is not specifically tied to the, to the Trinity Church courtyard. And then obviously you have the contract, which we, which we submit very clearly shows that it is not a site specific work of art. So I think that is an independent basis to affirm, bases to affirm. Well, I'm not clear. Are you saying it's not site specific, or if it is site specific, any lower Manhattan suffices? I don't think you can have a sculpture that is site specific to lower Manhattan. I mean, site specificity, if you think of, and I think you may even have been on this panel, Judge Newman, the, the Sarah case, where there was the sculpture that was specifically built into the, to the Federal Plaza. Many of us remember the Tilted Arc. Very fondly, I'm sure. So I think you can't have a site specific sculpture that is site specific to a huge, I mean, lower Manhattan is a relatively large geographic area. So I think site specificity requires a specific site like that location, whether it be Federal Circuit involved a sculpture in a park that had, that the artist claimed had to be in that specific location. So I think once you go to lower Manhattan and say, this sculpture is reminiscent of 9-11, and therefore belongs in lower Manhattan, you've left the world of site specificity. If the site specific argument is its commemorative quality, can it be anywhere and still commemorate? I think so. We have memorials to the Vietnam War in Washington, D.C. and New York. We have memorials to all sorts of things in all sorts of places. It's in Connecticut right now and available for the public to see. I mean, it's on a road in Connecticut that people could stop and look at it. So I don't think a sculpture, just because it is a memorial, which I would mention is not an argument that they presented at the district court level, but I don't think just because it's a memorial somehow translates it into a site specific work that my client has to display for the life of the artist. Thank you, counsel. Thank you, Your Honor. Ms. Elston? Your Honor, first of all— Did you allege in your complaint that this was minor reparable damage? No, we did not. And that has never been fully assessed. Major damage? The issue with the damage is that, and I have myself gone to see the piece in rural Connecticut, it is packed into trees and shrubs so densely you can't even see the full sculpture. It is completely surrounded by trees. It is not publicly accessible because it's within a seminary grounds that are private. The argument here, Your Honor, is that the artistic integrity of the piece requires that it be placed where it can be seen, where it was agreed to be placed, where it has a nexus to a historical site, which is the 9-11 event. 1.8 million people visited the sculpture in one year alone. The sculpture was exhibited for 10 years. The existence of the public presentation of the piece in this location means that several million people a year can see the piece, which enhances the honor of the artist and the reputation of the artist and enhances the esteem for the artwork. This is what Vera was meant to do. In terms of the public policy, I'd like to respond to that. My opponent brings up public policy. I don't know. Artwork has to be determined and judged on a case-by-case basis. I don't know of another single work that is a memorial with a site-specific purpose like this. We have two other cases in other circuits, Phillips and Kelly. Those were both denied site-specific protection because one involved plants that was Kelly that were considered to not be stable and therefore not subject to copyright protection, which is a prerequisite to Vera application. The other, Phillips, involved a marine theme, which wasn't sufficiently specific. It could have been anywhere in Boston Harbor or on any seacoast. In this case, you have, I think, an artwork that is precisely what the statue was meant to protect. What do you say about his point that the contractual allowance for loaning or non-display was sort of an abandonment of putting it where you want it? First of all, because Vera waivers have to be explicit, I don't think that qualifies to be an explicit ... Explicit, you mean citing the statute? Yes. Yes. Absolutely, I do. And why is that? If the things that are given away give away what the statute protects, why is a statutory reference necessary? Because if you look at the legislative history and the testimony of art professionals before Congress, especially Professor Ginsberg, who discusses the waiver issue at length, she states that because of the imbalance of power between artists and those buying sculpture, it is very important that a waiver be very explicit. That's why ... Yes, I understand it must be explicit as to what protections are being waived, but why must it cite the statute? Because the Vera rights are such particular rights that most people don't understand them very well, honestly, including artists. The right to ... And this is why we need expert testimony in this case, by the way. The idea of the integrity of the artist being embedded in the work is a very abstract concept that needs to be explicitly stated, or neither party would understand that it's been waived. Can I just go back to the one question I asked you about gross negligence? Yes. Have any major parts of this piece of art been broken off in the moving? Yes, the branches were broken. The branches were broken in the moving. One or many branches? I know that it was at least three. Of the branches? Yes. The smaller branches? Yes, Your Honor. Since we were dismissed on a 12B6 motion, we haven't had an opportunity for expert inspection, for proper reports, for the expert testimony that Congress recites in several places are required to interpret this statute. We need art experts to say why the site is important to this artwork. We need experts to say why the honor of the artist can only be preserved by having the memorial in this site. Well, those are two different issues. One, the site-specific, and the other is the damage to the statute. Yes, but Your Honor, we were dismissed before discovery, so we did not have an opportunity to get expert inspection. I understand, but did you say minor reparable damage in your complaint, as counsel alleges? There was a reference to minor damage, Your Honor, there was, because my client offered at his expense to repair the sculpture. My client made a comment in the context of he could repair it. Yes, he did. All right. Thank you both. We'll reserve decision.